1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

BUNGIE, INC., a Delaware corporation,

                Plaintiff,

    v.

MIHAI CLAUDIU-FLORENTIN, an
individual, d/b/a VETERANCHEATS.COM;
DOE 1 a/k/a BLAZE, an individual; DOE 2,
a/k/a KNORR, an individual; DOE 3 a/k/a
JOHN MCBERG, an individual, and DOES
4-10,

                Defendants.

No. 2:21-cv-01114

**PLAINTIFF'S MOTION FOR
DEFAULT JUDGMENT AGAINST
DEFENDANT MIHAI CLAUDIU-
FLORENTIN d/b/a VETERAN
CHEATS.COM AND SUPPORTING
MEMORANDUM OF LAW**

NOTICE ON MOTION CALENDAR:
February 7, 2023

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANT CLAUDIU-FLORENTIN
AND SUPPORTING MEMORANDUM
NO. 2:21-cv-01114

**Kilpatrick Townsend & Stockton, LLP**
1420 Fifth Avenue, Suite 3700, Seattle, Washington 98101
Phone: 206.467.9600

1

**TABLE OF CONTENTS**

2

I.   BACKGROUND ...................................................................................................2

A.   Bungie, *Destiny 2*, and the Limited Software License
     Agreement ....................................................................................................2

B.   Claudiu-Florentin, VeteranCheats.com, and the Cheats .....................3

II.  ARGUMENT .......................................................................................................6

A.   The Court Has Subject Matter Jurisdiction Over This Dispute. ........6

B.   The Court Has Personal Jurisdiction Over Claudiu-Florentin. .........7

C.   The *Eitel* Factors Strongly Favor Entry of Default Judgment. ..........8

     1.   The First, Sixth, and Seventh *Eitel* Factors Favor
          Default Judgment Because Claudiu-Florentin Has
          Consciously Decided Not to Appear. .......................................8

     2.   The Second and Third *Eitel* Factors Favor Bungie
          Because Bungie's Amended Complaint and Supporting
          Evidence Establish Claudiu-Florentin's Liability. ................9

          a.   Bungie Has Established Claudiu-Florentin's
               Liability for Copyright Infringement. ........................9

          b.   Bungie Has Established Claudiu-Florentin's
               Liability for Circumvention of Technological
               Measures. ......................................................................13

          c.   Bungie Has Established Claudiu-Florentin's
               Liability for Breach of Contract and Tortious
               Interference with Contractual Relations. ..................14

          d.   Bungie Has Established Claudiu-Florentin's
               Liability for Violating the Washington
               Consumer Protection Act. ..........................................16

     3.   The Fourth *Eitel* Factor Favors Bungie Because
          Claudiu-Florentin's Conduct Warrants the Damages
          Bungie Seeks. ...........................................................................17

     4.   The *Fifth Eitel* Factor Favors Bungie Because the
          Facts are Undisputed. .............................................................17

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANT CLAUDIU-FLORENTIN
AND SUPPORTING MEMORANDUM - i -
NO. 2:21-cv-01114

**Kilpatrick Townsend & Stockton, LLP**
1420 Fifth Avenue, Suite 3700, Seattle, Washington 98101
Phone: 206.467.9600

D.    The Court Should Award Bungie $146,662.28 in Actual Damages on Its Copyright Claim, $11,696,000 in Statutory Damages on its Circumvention Claims, and $217,250.70 in Attorney's Fees and Costs, Plus Fees and Costs Incurred After Submission of this Motion. ..................................................................18

1.    The Court Should Award Bungie $146,662.28 in Actual Damages on Its Copyright Claim. ...............................................19

2.    The Court Should Award Bungie $11,696,000 in Statutory Damages on Its Circumvention Claims. ...............................20

3.    Bungie is Entitled to Recover its Attorney's Fees and Costs. ................................................................................................22

E.    The Court Should Issue a Permanent Injunction. ............................................23

1.    Bungie Has Suffered Irreparable Harm. ................................................23

2.    Monetary Damages Alone Are an Inadequate Remedy. .......................24

3.    The Balance of Equities Strongly Favors a Permanent Injunction. ..............................................................................................25

4.    The Public Interest Is Served by Entry of a Permanent Injunction. ..............................................................................................26

III.   CONCLUSION ...........................................................................................................26

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANT CLAUDIU-FLORENTIN
AND SUPPORTING MEMORANDUM - ii -
NO. 2:21-cv-01114

**Kilpatrick Townsend & Stockton, LLP**
1420 Fifth Avenue, Suite 3700, Seattle, Washington 98101
Phone: 206.467.9600

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4
5

*A&M Records, Inc. v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001).............................................................................. 9

6
7

*Agence Fr. Presse v. Morel*,
   No. 10-cv-2730 (AJN), 2014 WL 3963124 (S.D.N.Y. Aug. 13, 2014)................................. 19

8

*Amazon Content Servs. LLC v. Kiss Libr.*,
   No. C20-1048 MJP, 2021 WL 5998412 (W.D. Wash. Dec. 17, 2021) .................................. 8

9
10

*Blizzard Ent., Inc. v. Bossland GmbH*,
   No. 16-cv-1236-DOC, 2017 WL 7806600 (C.D. Cal. Mar. 31, 2017) .................................. 11

11
12

*Bungie, Inc. v. Aimjunkies.com*,
   No. C21-811 TSZ, 2022 WL 2391705 (W.D. Wash. July 1, 2022) ..................................... 11

13

*Crim. Prods., Inc. v. Evans*,
   No. 16-CV-1647RAJ, 2018 WL 2397439 (W.D. Wash. Apr. 4, 2018)................................. 12

14
15

*Curtis v. Illumination Arts, Inc.*,
   33 F. Supp. 3d 1200 (W.D. Wash. 2014)........................................................... 9, 18

16
17

*CytoSport, Inc. v. Vital Pharms., Inc.*,
   617 F. Supp. 2d 1051 (E.D. Cal. 2009), *aff'd,* 348 F. App'x 288 (9th Cir. 2009)................. 24

18

*Derek Andrew, Inc. v. Poof Apparel Corp.*,
   528 F.3d 696 (9th Cir. 2008)............................................................................ 12

19
20

*eBay Inc. v. Bidder's Edge, Inc.*,
   100 F. Supp. 2d 1058 (N.D. Cal. 2000) ............................................................... 24

21

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006).................................................................................. 23, 26

22
23

*Edwards Vacuum, LLC v. Hoffman Instrumentation Supply, Inc.*,
   538 F. Supp. 3d 1132 (D. Or. 2021) ................................................................... 24

24
25

*Eitel v. McCool*,
   782 F.2d 1470 (9th Cir. 1986)................................................................... *passim*

26

*Eve Nev., LLC v. Derbyshire*,
   No. 21-0251-LK, 2022 WL 279030 (W.D. Wash. Jan. 31, 2022)................................. 25, 26

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANT CLAUDIU-FLORENTIN
AND SUPPORTING MEMORANDUM - iii -
NO. 2:21-cv-01114

**Kilpatrick Townsend & Stockton, LLP**
1420 Fifth Avenue, Suite 3700, Seattle, Washington 98101
Phone: 206.467.9600

*Facebook, Inc. v. ILikeAd Media Int'l Co.*,
   No. 19-CV-07971-SK, 2022 WL 2289064 (N.D. Cal. Feb. 1, 2022), *report and
   recommendation adopted as modified*, No. 19-CV-07971-JST, 2022 WL
   2289058 (N.D. Cal. Mar. 15, 2022) ........................................................................ 7

*Fair Hous. of Marin v. Combs*,
   285 F.3d 899 (9th Cir. 2002) ................................................................................... 6

*FameFlynet, Inc. v. Feel the Piece, LLC*,
   No. CV 17-5406 FMO, 2018 WL 4850383 (C.D. Cal. Feb. 21, 2018) ................. 12

*Fogerty v. Fantasy, Inc.*,
   510 U.S. 517 (1994) ............................................................................................... 22

*GC2 Inc. v. Int'l Game Tech.*,
   391 F. Supp. 3d 828 (N.D. Ill. 2019) .................................................................... 19

*Getty Images (U.S.), Inc. v. Virtual Clinics*,
   No. C13–0626JLR, 2014 WL 1116775 (W.D. Wash. Mar. 20, 2014) ......... 24, 25, 26

*Getty Images (US), Inc. v. Virtual Clinics*,
   No. C13-0626JLR, 2014 WL 358412 (W.D. Wash. Jan. 31, 2014) ........................ 9

*Glacier Films (USA), Inc. v. Turchin*,
   896 F.3d 1033 (9th Cir. 2018) ............................................................................... 23

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
   105 Wash. 2d 778, 719 P.2d 531 (Wash. 1986) .................................................... 17

*Hearst Holdings, Inc. v. Kim*,
   No. CV07-4642-GAF, 2008 WL 11336137 (C.D. Cal. Aug. 17, 2008) ................ 25

*Holland Am. Line Inc. v. Wärtsilä N. Am. Inc.*,
   485 F.3d 450 (9th Cir. 2007) ................................................................................... 7

*Hunter Killer Prods., Inc. v. Zarlish*,
   No. 19-00168-LEK-KJM, 2020 WL 3980117 (D. Haw. June 15, 2020) ............. 25

*Kirtsaeng v. John Wiley & Sons, Inc.*,
   579 U.S. 197 (2016) ............................................................................................... 22

*Klem v. Wash. Mut. Bank*,
   176 Wash. 2d 771, 295 P.3d 1179 (Wash. 2013) .................................................. 16

*Landstar Ranger, Inc. v. Parth Enters., Inc.*,
   725 F. Supp. 2d 916 (C.D. Cal. 2010) ................................................................. 18

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANT CLAUDIU-FLORENTIN
AND SUPPORTING MEMORANDUM - iv -
NO. 2:21-cv-01114

**Kilpatrick Townsend & Stockton, LLP**
1420 Fifth Avenue, Suite 3700, Seattle, Washington 98101
Phone: 206.467.9600

*Leingang v. Pierce Cnty. Med. Bureau, Inc.*,
    131 Wash. 2d 133, 930 P.2d 288 (Wash. 1997)............................................................... 15, 16

*Lewis Galoob Toys, Inc. v. Nintendo of America, Inc.*,
    964 F.2d 965 (9th Cir. 1992)........................................................................................... 11

*MDY Indus. LLC v. Blizzard Ent. Inc.*,
    629 F.3d 928 (9th Cir. 2010)........................................................................................... 14

*MercExchange L.L.C. v. eBay, Inc.*,
    500 F. Supp. 2d 556 (E.D. Va. 2007)................................................................................ 24

*Minx Int'l, Inc. v. M.R.R. Fabric*,
    No. CV 13-5947 PSG (CWX), 2015 WL 12645752 (C.D. Cal. Feb. 11, 2015)..................... 19

*Myers v. State*,
    152 Wash. App. 823, 218 P.3d 241 (Wash. Ct. App. 2009) ................................................ 15

*Nexon Am., Inc. v. S.H.*,
    No. CV 10-9689, 2011 WL 13217951 (C.D. Cal. Dec. 13, 2011) ......................................... 12

*Nintendo of Am., Inc. v. Dragon Pac. Int'l*,
    40 F.3d 1007 (9th Cir. 1994).......................................................................................... 18, 19

*Padded Spaces LLC v. Weiss*,
    No. C21-0751JLR, 2022 WL 2905887 (W.D. Wash. July 22, 2022)............................... 6, 8, 9

*Panag v. Farmers Ins. Co. of Wash.*,
    166 Wash. 2d 27, 204 P.3d 885 (Wash. 2009)......................................................................... 16

*PepsiCo., Inc. v. Cal. Sec. Cans*,
    238 F. Supp. 2d 1172 (C.D. Cal. 2002) .............................................................................. 9, 17

*Philips N. Am. LLC v. KPI Healthcare, Inc.*,
    No. SACV 19-1765 JVS (JDEx), 2021 WL 61035527 (N.D. Cal. Sept. 1, 2021) ........... 21, 22

*Polar Bear Prods., Inc. v. Timex Corp.*,
    384 F.3d 700 (9th Cir. 2004).......................................................................................... 20

*Principal Life Ins. Co. v. Hill*,
    No. C21-1716 MJP, 2022 WL 2718087 (W.D. Wash. July 13, 2022) .................................... 6

*Seattle Pac. Indus., Inc. v. S3 Holding LLC*,
    831 F. App'x 814 (9th Cir. 2020) ........................................................................................ 18

*Sony Comput. Ent. Am., Inc. v. Filipiak*,
    406 F. Supp. 2d 1068 (N.D. Cal. 2005) ................................................................................ 21

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANT CLAUDIU-FLORENTIN
AND SUPPORTING MEMORANDUM - v -
NO. 2:21-cv-01114

**Kilpatrick Townsend & Stockton, LLP**
1420 Fifth Avenue, Suite 3700, Seattle, Washington 98101
Phone: 206.467.9600

*Take-Two Interactive Software, Inc. v. Zipperer*,
  No. 18 Civ. 2608 (LLS), 2018 WL 4347796 (S.D.N.Y. Aug. 16, 2018).............................. 11

*Tu v. TAD Sys. Tech. Inc.*,
  No. 08-CV-3822(SLT)(RM), 2009 WL 2905780 (E.D.N.Y. Sept. 10, 2009)...................... 26

*In re Tuli*,
  172 F.3d 707 (9th Cir. 1999)............................................................................................ 6

*Universal City Studios, Inc. v. Corley*,
  273 F.3d 429 (2d Cir. 2001)............................................................................................ 19

*Urb. Accessories, Inc. v. Iron Age Design & Imp., LLC*,
  No. C14-1529JLR, 2015 WL 1510027 (W.D. Wash. Apr. 1, 2015) .................................... 10

*Windsurfing Int'l Inc. v. AMF, Inc.*,
  782 F.2d 995 (Fed. Cir. 1986).......................................................................................... 25

**Statutes**

17 U.S.C. 504(a) ................................................................................................................ 19

17 U.S.C. § 101 ................................................................................................................. 12

17 U.S.C. § 106 .............................................................................................................. 9, 10

17 U.S.C. § 106(1) ........................................................................................................ 10, 11

17 U.S.C. § 106(2) ........................................................................................................ 10, 11

17 U.S.C. § 106(3) ........................................................................................................ 10, 12

17 U.S.C. § 106(4) ............................................................................................................ 10

17 U.S.C. § 410(c) ............................................................................................................ 10

17 U.S.C. § 501 ................................................................................................................. 6

17 U.S.C. § 502(a) ............................................................................................................ 23

17 U.S.C. § 504(a) ............................................................................................................ 20

17 U.S.C. § 504(b) ........................................................................................................ 19, 20

17 U.S.C. § 1201 .......................................................................................................... 13, 21

17 U.S.C. § 1201(a) ............................................................................................... 6, 13, 14, 20

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANT CLAUDIU-FLORENTIN
AND SUPPORTING MEMORANDUM - vi -
NO. 2:21-cv-01114

**Kilpatrick Townsend & Stockton, LLP**
1420 Fifth Avenue, Suite 3700, Seattle, Washington 98101
Phone: 206.467.9600

17 U.S.C. § 1201(a)(1) ................................................................................................. 13

17 U.S.C. § 1201(a)(2) ................................................................................................. 13

17 U.S.C. § 1201(a)(3) ................................................................................................. 13

17 U.S.C. § 1203(b)(1) ................................................................................................. 23

17 U.S.C. § 1203(c)(1) ................................................................................................. 21

17 U.S.C. § 1203(c)(3) ................................................................................................. 21

28 U.S.C. 1367(a) ............................................................................................................. 7

28 U.S.C. § 1331 .............................................................................................................. 6

Digital Millennium Copyright Act ..................................................................... *passim*

Washington Consumer Protection Act ........................................................... 1, 7, 16, 22

**Other Authorities**

Fed. R. Civ. P. 4(f)(1) ...................................................................................................... 8

Fed. R. Civ. P. 55 ............................................................................................................. 6

United State Constitution, Article III ............................................................................... 7

1    As Plaintiff Bungie, Inc. ("Bungie") alleged in its Amended Complaint (Dkt. 18),

2    Defendants have developed and trafficked in cheat software that infringes Bungie's rights

3    in its highly successful game, *Destiny 2*, in violation of federal and state law. Defaulting

4    Defendant Mihai Claudiu-Florentin ("Claudiu-Florentin"), doing business as

5    VeteranCheats.com, or his associates have played a leading role in those violations by (a)

6    developing, marketing, distributing, and trafficking in the cheat software, individually or

7    collectively with the other Defendants, and (b) owning and controlling the content of the

8    website Defendants used to distribute those software products. *Id.*; Declaration of James

9    Barker ("Barker Decl.") ¶ 26.

10    As shown in detail below, the evidence of record establishes Claudiu-Florentin's

11    personal liability on each of Bungie's claims in this action under the Copyright Act, the

12    Digital Millennium Copyright Act, the Washington Consumer Protection Act, and state

13    law. Thus, in view of Claudiu-Florentin's default, Bungie is entitled to default judgment

14    on its claims and an award in the amount of $12,059,912.98. This amount includes actual

15    damages of $146,662.28 on Bungie's copyright infringement claims; statutory damages

16    of $11,696,000 on its circumvention claims (at $2,000 per circumvention device sold);

17    and attorneys' fees and costs in the amount of $217,250.70 to be supplemented with an

18    award of Bungie's attorneys' fees and costs incurred after submission of this Motion.

19    Bungie also is entitled to a permanent injunction barring Claudiu-Florentin from

20    developing, marketing, distributing, trafficking in, or otherwise profiting from cheat

21    software targeting *Destiny 2* or other Bungie games. Cheat software allows unskilled and

22    unethical players to gain an unfair advantage in shared-world massively-multiplayer

23    online ("MMO") games, in which millions of users around the world play with and

24    compete against each other for bragging rights and in-game rewards. Barker Decl. ¶¶ 12-

25    16. Cheat software negatively impacts the gaming experience of Bungie's community of

26    honest players who enjoy playing and winning fairly using skill and developed through

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANT CLAUDIU-FLORENTIN
AND SUPPORTING MEMORANDUM - 1 -
NO. 2:21-cv-01114

**Kilpatrick Townsend & Stockton, LLP**
1420 Fifth Avenue, Suite 3700, Seattle, Washington 98101
Phone: 206.467.9600

practice. *Id.* When Bungie's *Destiny 2* player community is dissatisfied, players play less often or even leave the game entirely. *Id.* ¶¶ 12-16, 31. Not only does this impact Bungie's revenue—which is derived entirely from players' in-game purchases and purchases of additional game content and memorabilia—but player dissatisfaction also irreparably harms Bungie's goodwill in the gaming community. *Id.*

I.   **BACKGROUND**

A.   **Bungie, *Destiny 2*, and the Limited Software License Agreement**

Bungie is the developer and publisher of the critically-acclaimed and successful video game *Destiny 2*, a shared-world MMO shooter game. Barker Decl. ¶ 2. *Destiny 2* operates on a "free-to-play" model under which the base game and experience are provided without charge, and anyone with the hardware and inclination can download the game and play it. *Id.* ¶ 7. If players enjoy the game, they can become customers; Bungie offers for sale various expansions and packs of downloadable content that add story missions and campaigns, new weapons and items, and a wide variety of cosmetic and aesthetic enhancements that players can obtain using "silver," an in-game currency. *Id.* ¶ 8. The success of Bungie's business therefore depends entirely upon providing a high-quality player experience, which in turn creates community goodwill. *Id.* The better the game, the more fun it is to play, the more players become paying customers. *Id.*

Bungie has heavily invested in the development of new content for *Destiny 2*—both free and commercial. *Id.* ¶ 9. For example, Bungie released a massive new expansion, The Witch Queen, in early 2022, and will release another, Lightfall, in February 2023. *Id.* Cheat software imperils these investments as well as Bungie's entire free-to-play business model. *Id.* ¶¶ 14-15. When *Destiny 2*'s competitive modes are disrupted by cheaters, the game becomes unfair—cheaters capture in-game rewards from honest players with greater skill, and honest players stop having fun. *Id.* Moreover, the existence of even a small number of cheaters, typically in the most visible and

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANT CLAUDIU-FLORENTIN
AND SUPPORTING MEMORANDUM - 2 -
NO. 2:21-cv-01114

**Kilpatrick Townsend & Stockton, LLP**
1420 Fifth Avenue, Suite 3700, Seattle, Washington 98101
Phone: 206.467.9600

competitive game modes, drives a perception that the game is overrun. *Id.* When players stop having fun, they stop spending money, stop participating in the game's community, stop promoting the game in their own capacity as fans, influencers, and creators, and sometimes stop playing altogether. *Id.* The proliferation of cheating also leads to bad press and scorn from the wider gaming industry. *Id.* ¶ 15, Ex. 2.

Bungie devotes significant resources to protecting the quality of its player experience. To play *Destiny 2*, players must first agree to the Limited Software License Agreement (the "LSLA"). *Id.* ¶ 18, Ex. 3. This necessarily means that Claudiu-Florentin and the other Defendants could not have downloaded, installed, or played *Destiny 2* without agreeing to the LSLA. *Id.* ¶ 19. Among other terms, the LSLA contains provisions acknowledging Bungie's intellectual property rights and prohibiting cheating, hacking, and modifying the game. *Id.* ¶ 20, Ex. 3. Bungie also invests heavily in technical measures designed to mitigate cheating and identify and ban cheaters. *Id.* ¶¶ 17-25. The more complex and novel the cheat, the more expensive it is for Bungie's software engineers to defeat it. *Id.* ¶¶ 34-35. Claudiu-Florentin's VeteranCheats software (the "Cheats"), in particular, has required Bungie to expend substantial amounts of time, resources, and effort to combat it—including legal fees. *Id.* ¶¶ 32-37.

### B.     Claudiu-Florentin, VeteranCheats.com, and the Cheats

Claudiu-Florentin, a resident of Romania, makes a living through the distribution illegal cheat software. *Id.* ¶ 26. Claudiu-Florentin controlled the website VeteranCheats.com (the "Website") through which Claudiu-Florentin and the other Defendants have advertised and sold the Cheats. *Id.*; *see also* Declaration of Christopher T. Varas ("Varas Decl.") ¶¶ 3, 10, Exs. 2, 7. Claudiu-Florentin used the Website to offer various Cheats for *Destiny 2*—called Razor, HLBOT, and Render—for which, until recently, users could purchase a "day key" or a "month key" for the Euro equivalent of approximately $13 to $19 for a day and $105 to $164 for a month. Barker Decl. ¶ 28;

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANT CLAUDIU-FLORENTIN
AND SUPPORTING MEMORANDUM - 3 -
NO. 2:21-cv-01114

**Kilpatrick Townsend & Stockton, LLP**
1420 Fifth Avenue, Suite 3700, Seattle, Washington 98101
Phone: 206.467.9600

Varas Decl. ¶ 10, Ex. 9. Claudiu-Florentin justified these "high prices" by pointing to "the complex anti-cheat this game has . . . which means that high-quality cheats are expensive to create and maintain." *Id.*  Claudiu-Florentin marketed the Cheats using copyrighted imagery from *Destiny 2*. Barker Decl. ¶ 27; Varas Decl. ¶ 10, Ex. 9.

Once activated by a player, the Cheats work by circumventing Bungie's technological controls to inject cheat software into the game memory for *Destiny 2*. Barker Decl. ¶ 29; Dkt. 18 ¶ 39. That code provides purchasers of the Cheats with an array of features including "aimbots" (which automatically target opponents on screen, allowing the cheater to make even the most difficult shots with little or no effort), "ESP" (which allows players to see information about their opponents that is normally not visible) and a variety of other artificial enhancements such as unlimited ammunition and unlimited lives. Barker Decl. ¶¶ 22, 29; Dkt. 18 ¶ 39. In addition to altering play for those purchasing the Cheats, these features alter the display and game experience for other players. Barker Decl. ¶¶ 29-30; Dkt. 18 ¶ 41. A player whose opponent can see his location through a wall, then shoot him without effort when he appears, experiences an altered and unfair version of the game. Barker Decl. ¶¶ 29-30; Dkt. 18 ¶¶ 4, 41. Claudiu-Florentin posted promotional videos on the Website documenting how the Cheats enable customers to modify the game for other players. Barker Decl. ¶ 30; Varas Decl. ¶ 10, Ex. 9; Dkt. 18 ¶ 41. Those videos obviously incorporate copyrighted audiovisual content from *Destiny 2*. Barker Decl. ¶ 30; Dkt. 18 ¶ 48.

Claudiu-Florentin's and the other Defendants' actions have caused concrete and irreparable harm to Bungie and the *Destiny 2* community. As honest players have observed, the "cheating problem in PC Destiny 2" "ruin[s]" the game and "will only frustrate and drive people away" because "indestructible . . . instakillers" destroy the experience for everyone. Barker Decl. ¶ 31, Ex. 4 at 2, 5; *see also id.* at 4 ("Might quit Destiny 2 at this rate if it doesn't change"); Dkt. 18 ¶ 42. This frustration, and public

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANT CLAUDIU-FLORENTIN
AND SUPPORTING MEMORANDUM - 4 -
NO. 2:21-cv-01114

**Kilpatrick Townsend & Stockton, LLP**
1420 Fifth Avenue, Suite 3700, Seattle, Washington 98101
Phone: 206.467.9600

1   expressions of it, damage Bungie's reputation and impair its ability to keep players

2   engaged. Barker Decl. ¶¶ 15, 31, 37; Dkt. 18 ¶ 42.  Compounding these harms, the cheat

3   software distributed through the Website also features "Hardware ID spoofers." Barker

4   Decl. ¶¶ 25, 29; Dkt. 18 ¶ 43. These features help cheaters alter information in the anti-

5   cheat systems Bungie uses to identify and block access to hardware that has been banned

6   for cheating or other violations of the LSLA, thus circumventing technical measures

7   specifically designed to prevent banned users from accessing Bungie's services for

8   *Destiny 2*. Barker Decl. ¶¶ 25, 29; Dkt. 18 ¶ 43. Claudiu-Florentin has expressly stated

9   that the Cheats on the Website are designed to evade detection by Bungie's anti-cheat

10   technology. Barker Decl. ¶ 31; Varas Decl. ¶ 10, Ex. 9; Dkt. 18 ¶ 43.

11          As Bungie confirmed through expedited discovery, *see* Dkt. 9 at 3 (order granting

12   ex parte motion for expedited discovery), Claudiu-Florentin relies on third-party service

13   providers to operate the Website, distribute the Cheats, and collect and process payments.

14   *See* Barker Decl. ¶ 32. On August 10, 2022, Bungie moved the Court for an Order

15   allowing it to conduct post-default discovery on Coinbase, PayPal, and Stripe. Dkt. 30 at

16   1. The Court granted this motion on September 6, 2022, Dkt. 31, and Bungie served

17   subpoenas on all three entities. Varas Decl. ¶ 7, n.1. The subpoenas sought information

18   concerning "any software or application incorporating the terms 'Destiny', 'HLBOT', or

19   'Razor' in the product name or transaction history" sold by Claudiu-Florentin or in

20   association with the domain name <veterancheats.com> and associated email addresses

21   and phone numbers. *Id.*, Ex. 5 (subpoena to Stripe). In response to this subpoena, Stripe

22   produced data on thousands of sales of Cheats, including 5,848 separate transactions

23   identifying subscriptions for either a *Destiny 2* Cheat or a premium cheat product

24   containing *Destiny 2* as an option.[1] Varas Decl. ¶ 9, Exs. 6-7; Barker Decl. ¶ 33, Ex. 5.

25

26

_____

[1] Neither Coinbase nor PayPal produced information relevant to this motion. Varas Decl. ¶ 7, n. 1.

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANT CLAUDIU-FLORENTIN
AND SUPPORTING MEMORANDUM - 5 -
NO. 2:21-cv-01114

**Kilpatrick Townsend & Stockton, LLP**
1420 Fifth Avenue, Suite 3700, Seattle, Washington 98101
Phone: 206.467.9600

1

## II.    ARGUMENT

This Court has authority to enter default judgment against Claudiu-Florentin

pursuant to Federal Rule of Civil Procedure 55. *See* Fed. R. Civ. P. 55; LCR 55. In

exercising this authority, the Court must ensure that it has both personal and subject

matter jurisdiction. *Padded Spaces LLC v. Weiss*, No. C21-0751JLR, 2022 WL 2905887,

at *2 (W.D. Wash. July 22, 2022) (citing *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999)).

Then, the Court must assess the seven *Eitel* factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's
> substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at
> stake in the action; (5) the possibility of a dispute concerning material facts;
> (6) whether the default was due to excusable neglect, and (7) the strong policy
> underlying the Federal Rules of Civil Procedure favoring decisions on the
> merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "In performing this analysis,

'the general rule is that well-pled allegations in the complaint regarding liability are

deemed true.'" *Principal Life Ins. Co. v. Hill*, No. C21-1716 MJP, 2022 WL 2718087, at

*1 (W.D. Wash. July 13, 2022) (quoting *Fair Hous. of Marin v. Combs*, 285 F.3d 899,

906 (9th Cir. 2002)). "[T]he district court is not required to make detailed findings of

fact." *Id.* (citation omitted).

As shown in detail below, the Court has both subject matter jurisdiction over this

dispute and personal jurisdiction over Claudiu-Florentin, and the *Eitel* factors weigh

heavily in favor of default judgment against Claudiu-Florentin.

### A.    The Court Has Subject Matter Jurisdiction Over This Dispute.

In its Amended Complaint, Bungie asserted claims against Claudiu-Florentin

under the Copyright Act, 17 U.S.C. § 501 *et seq.*, and the Digital Millennium Copyright

Act, codified in part at 17 U.S.C. § 1201(a). Dkt. 18 ¶¶ 53-80. The Court has federal

question jurisdiction over civil actions arising under these federal statutes. *See* 28 U.S.C.

§ 1331 ("The district courts shall have original jurisdiction of all civil actions arising

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANT CLAUDIU-FLORENTIN
AND SUPPORTING MEMORANDUM - 6 -
NO. 2:21-cv-01114

**Kilpatrick Townsend & Stockton, LLP**
1420 Fifth Avenue, Suite 3700, Seattle, Washington 98101
Phone: 206.467.9600

1   under the . . . laws . . . of the United States."). The Court also has supplemental

2   jurisdiction over Bungie's state law claims for breach of contract, tortious interference,

3   and violation of the Washington Consumer Protection Act because those claims are so

4   related to Bungie's copyright and circumvention claims as to "form part of the same case

5   or controversy under Article III of the United States Constitution." 28 U.S.C. 1367(a);

6   *see* Dkt. 18 ¶¶ 81-102. The Court therefore has subject matter jurisdiction over the claims

7   in suit.

8           **B.**      **The Court Has Personal Jurisdiction Over Claudiu-Florentin.**

9           The Court also has personal jurisdiction over Claudiu-Florentin. Claudiu-

10   Florentin agreed to the LSLA and accepted its terms as part of the process of

11   downloading, installing, and playing *Destiny 2*, as every user is required to do. Dkt. 18

12   ¶¶ 13, 46; Barker Decl. ¶¶ 18-19, Ex. 3. The LSLA contains a forum selection clause

13   under which those who accept the agreement "consent to the exclusive jurisdiction of the

14   state and federal courts in King County, Washington." Barker Decl. ¶ 18, Ex. 3 at 7; Dkt.

15   18 ¶ 13. That agreement is sufficient to give the Court personal jurisdiction over Claudiu-

16   Florentin. *See Facebook, Inc. v. ILikeAd Media Int'l Co.*, No. 19-CV-07971-SK, 2022

17   WL 2289064, at *2 (N.D. Cal. Feb. 1, 2022), *report and recommendation adopted as*

18   *modified*, No. 19-CV-07971-JST, 2022 WL 2289058 (N.D. Cal. Mar. 15, 2022) (citing

19   *Holland Am. Line Inc. v. Wärtsilä N. Am. Inc.*, 485 F.3d 450, 458 (9th Cir. 2007)). The

20   Court also has personal jurisdiction over Claudiu-Florentin under Washington's long-arm

21   statute, which provides for jurisdiction over "any cause of action arising from . . . [t]he

22   commission of a tortious act within this state" by "[a]ny person, whether or not a citizen

23   or resident of this state." RCW 4.28.185(1), (1)(b). The Court served process on Claudiu-

24   Florentin by mail, Dkt. 22, and Claudiu-Florentin acknowledged receipt on March 29,

25   2022. Dkt. 26. Bungie also served Claudio-Florentin via the Romanian Central Authority,

26   in accordance with Articles 3 through 6 of the Convention on the Service Abroad of

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANT CLAUDIU-FLORENTIN
AND SUPPORTING MEMORANDUM - 7 -
NO. 2:21-cv-01114

**Kilpatrick Townsend & Stockton, LLP**
1420 Fifth Avenue, Suite 3700, Seattle, Washington 98101
Phone: 206.467.9600

Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention") and Federal Rule of Civil Procedure 4(f)(1) by transmitting the documents required for service of process to the Romanian Central Authority. Dkt. 25. Bungie has obtained proof that Claudiu-Florentin appeared in person in a Romanian court on September 2, 2022, whereupon he was handed copies of the documents sent by this Court and acknowledged "that the communication procedure of the letters has been fulfilled." Varas Decl. ¶ 6, Ex. 4.

### C.   The *Eitel* Factors Strongly Favor Entry of Default Judgment.

#### 1.   The First, Sixth, and Seventh *Eitel* Factors Favor Default Judgment Because Claudiu-Florentin Has Consciously Decided Not to Appear.

Each of the first, sixth, and seventh *Eitel* factors favors entry of default judgment. Taking the sixth *Eitel* factor first, the evidence of record establishes that Claudiu-Florentin received actual notice of this litigation at least as early as March 29, 2022, and – in addition – appeared in a Romanian court on September 2, 2022, to accept service of process a second time, yet he apparently chose not to appear. *See* Dkt. 26; Varas Decl. ¶¶ 5-6, Ex. 4. That being the case, there is no evidence of excusable neglect. *See Padded Spaces*, 2022 WL 2905887, at *3 (weighing sixth *Eitel* factor in favor of default judgment in the absence of such evidence).

Turning to prejudice under the first *Eitel* factor, Claudiu-Florentin is deemed to have admitted, by his default, the truth of Bungie's allegations concerning the financial and reputational harm Bungie has suffered as a result of his unlawful conduct. Thus, Bungie would be the party to suffer prejudice if the Court declined to enter default judgment, as Bungie would have no remedy against Claudiu-Florentin and no means to prevent him from inflicting further harm. *See Amazon Content Servs. LLC v. Kiss Libr.*, No. C20-1048 MJP, 2021 WL 5998412, at *3 (W.D. Wash. Dec. 17, 2021) ("Defendants have failed to appear or participate in this litigation. Plaintiffs face prejudice by not being

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT CLAUDIU-FLORENTIN AND SUPPORTING MEMORANDUM - 8 - NO. 2:21-cv-01114

**Kilpatrick Townsend & Stockton, LLP**
1420 Fifth Avenue, Suite 3700, Seattle, Washington 98101
Phone: 206.467.9600

able to obtain complete relief on their claims . . . .").

Finally, the seventh *Eitel* factor also favors entry of default judgment. The usual preference to decide cases on the merits simply does not apply, as Claudiu-Florentin's "failure to answer [Bungie's] complaint makes a decision on the merits impractical, if not impossible." *Padded Spaces*, 2022 WL 2905887, at *3 (citing *PepsiCo., Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002)). In sum, the first, sixth, and seventh *Eitel* factors weigh in Bungie's favor.

### 2. The Second and Third *Eitel* Factors Favor Bungie Because Bungie's Amended Complaint and Supporting Evidence Establish Claudiu-Florentin's Liability.

The second and third *Eitel* factors are "often analyzed together." *Padded Spaces*, 2022 WL 2905887, at *3 (quoting *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014)). In assessing these factors, the Court must examine whether Bungie pleaded facts sufficient to establish and succeed on its claims. *Id.*; *see PepsiCo*, 238 F. Supp. 2d at 1175 ("The Ninth Circuit has suggested that these two factors require that a plaintiff 'state a claim on which the [plaintiff] may recover.'") (citations omitted). As shown below, this Motion is amply supported as to each of Bungie's claims by the well-pleaded allegations in the Amended Complaint, the sworn declaration of Bungie's counsel, and supporting documentary evidence.[2]

### a. Bungie Has Established Claudiu-Florentin's Liability for Copyright Infringement.

To prevail on its claim of copyright infringement, Bungie must establish that: (1) it owns copyrights in *Destiny 2*; and (2) Claudiu-Florentin violated at least one of the exclusive rights enumerated in 17 U.S.C. § 106. *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001) (citations omitted). Bungie has amply established these

---

[2] *See Getty Images (US), Inc. v. Virtual Clinics*, No. C13-0626JLR, 2014 WL 358412, at *2 (W.D. Wash. Jan. 31, 2014) (finding [a]t the default judgment stage, well-pleaded factual allegations, except those related to damages, are considered admitted and are sufficient to establish a defendant's liability).

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANT CLAUDIU-FLORENTIN
AND SUPPORTING MEMORANDUM - 9 -
NO. 2:21-cv-01114

**Kilpatrick Townsend & Stockton, LLP**
1420 Fifth Avenue, Suite 3700, Seattle, Washington 98101
Phone: 206.467.9600

elements here.

First, attached to the Amended Complaint are copies of Bungie's copyright registrations for *Destiny 2* and *Destiny 2*: *Beyond Light*, in each case as both a literary work (consisting of computer code) and an audiovisual work. Dkt. 18-1 through 18-4; Barker Decl. ¶ 3, Ex. 1. Because those registrations issued "within five years after first publication of the work," they "constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). Claudiu-Florentin has not introduced any evidence to the contrary.

Second, Bungie's well-pleaded allegations and the evidence of record establish that Claudiu-Florentin and the other Defendants violated Bungie's exclusive rights by developing and offering the Cheats for sale on the Website. Section 106 of the Copyright Act gives copyright owners "the exclusive rights to do and to authorize" the following acts, among others:

> (1)   to reproduce the copyrighted work in copies . . . ;
> (2)   to prepare derivative works based upon the copyrighted work;
> (3)   to distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership . . . ; [and]
> (4)   in the case of . . . audiovisual works, to perform the copyrighted work publicly . . . .

17 U.S.C. § 106(1)-(4). "Copyright is a strict liability tort," and "all individuals who participate are jointly and severally liable." *Urb. Accessories, Inc. v. Iron Age Design & Imp., LLC*, No. C14-1529JLR, 2015 WL 1510027, at *4 (W.D. Wash. Apr. 1, 2015) (citation omitted).

Claudiu-Florentin infringed Bungie's copyrights in multiple ways. First, during the process of developing the Cheats, one or more of Claudiu-Florentin and the other Defendants fraudulently gained access to the *Destiny 2* code by downloading, installing, and playing it without any intention of abiding by the terms of the LSLA. Dkt. 18 ¶¶ 46, 47; Barker Decl. ¶¶ 18-20; Varas Decl. ¶ 10, Ex. 9 ("[a]s you will know, using cheats is

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANT CLAUDIU-FLORENTIN
AND SUPPORTING MEMORANDUM - 10 -
NO. 2:21-cv-01114

**Kilpatrick Townsend & Stockton, LLP**
1420 Fifth Avenue, Suite 3700, Seattle, Washington 98101
Phone: 206.467.9600

strictly against the rules of the game"); *see Blizzard Ent., Inc. v. Bossland GmbH*, No. 16-cv-1236-DOC, 2017 WL 7806600, at *4 (C.D. Cal. Mar. 31, 2017) (finding Blizzard properly alleged direct infringement where the defendant fraudulently gained access to Blizzard's game software). Claudiu-Florentin and the other Defendants then developed cheat software that incorporates *Destiny 2*'s code structures and graphics. Dkt. 18 ¶¶ 3, 4, 8-10, 33-41; Barker Decl. ¶¶ 27-30. This constitutes unauthorized reproduction. *See* 17 U.S.C. § 106(1); *Bungie, Inc. v. Aimjunkies.com*, No. C21-811 TSZ, 2022 WL 2391705, at *2 (W.D. Wash. July 1, 2022) (cheat software that "necessarily copied" code corresponding to data structures likely infringed).

In addition, Claudiu-Florentin and the other Defendants adapted *Destiny 2* by creating cheat software ██████████████████████████████████████ ████████████████████████████████████████████████. Dkt. 18 ¶¶ 39-41; Barker Decl. ¶¶ 29-30. For example, the Cheats ████████████████████████████████████ ████████████████████████████████████████████████. Dkt. 18 ¶¶ 39-41; Barker Decl. ¶ 29. This feature is absolutely not available to honest players in *Destiny 2*. Barker Decl. ¶ 29. Adding ████████████████████ to Bungie's copyrighted *Destiny 2* audiovisual work creates an unauthorized derivative work under 17 U.S.C. § 106(2).[3] *See Aimjunkies.com*, 2022 WL 2391705, at *2 n.4 (granting preliminary injunction where, *inter alia*, Bungie alleged "[t]he Defendants' ESP feature . . . modifies the audiovisual display of Destiny 2 'by displaying a distinct box around the other players, displaying the players' names, and their distance from the cheat user'" (citation omitted)); *Take-Two Interactive Software, Inc. v. Zipperer*, No. 18 Civ.

---

[3] In contrast to *Lewis Galoob Toys, Inc. v. Nintendo of America, Inc.*, 964 F.2d 965 (9th Cir. 1992), all of the Cheats' modifications to *Destiny 2* are created by instructions fixed within the software code for the Cheats themselves, and the Cheats exist in a concrete form that substantially incorporates Bungie's protected expression. Barker Decl. ¶ 30; Varas Decl. ¶ 10, Ex. 9. *Compare to Lewis Galoob Toys*, 964 F.2d at 968 (finding a mechanical device interposed between a game cartridge and a gaming console did not create a derivative work where the ephemeral display was entirely created during play by the original game).

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANT CLAUDIU-FLORENTIN
AND SUPPORTING MEMORANDUM - 11 -
NO. 2:21-cv-01114

**Kilpatrick Townsend & Stockton, LLP**
1420 Fifth Avenue, Suite 3700, Seattle, Washington 98101
Phone: 206.467.9600

2608 (LLS), 2018 WL 4347796, at *8 (S.D.N.Y. Aug. 16, 2018) (finding cheat software that created "alternative version" of video game "with added elements" sufficient to support finding of likely success on the merits).

Finally, Claudiu-Florentin promoted the Cheats on the Website by featuring audiovisual sequences from *Destiny 2*, then used the Website to distribute and offer to distribute copies of the Cheats to paying customers. Dkt. 18 ¶ 37; Barker Decl. ¶¶ 26-27. These acts violate Bungie's exclusive rights of public performance and public distribution because Claudiu-Florentin "communicate[d] a performance . . . of the work . . . to the public" by means of the internet, where "members of the public capable of receiving the performance" could "receive it in the same place or in separate places and at the same time or at different times." *See* 17 U.S.C. § 101 (defining "publicly"); *see also* 17 U.S.C. § 106(3) (giving owners of copyright the exclusive right "to distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership"); *Nexon Am., Inc. v. S.H.*, No. CV 10-9689, 2011 WL 13217951, at *4 (C.D. Cal. Dec. 13, 2011) (finding the defendant infringed the plaintiff's distribution right by uploading a modified version of the plaintiff's video game software to a website, where it was downloaded by third parties).

Based on these facts, Bungie has alleged that Claudiu-Florentin acted willfully. Dkt. No. 18 ¶¶ 60, 68, 78. Factual allegations of willfulness are deemed admitted on default. *See Crim. Prods., Inc. v. Evans*, No. 16-CV-1647RAJ, 2018 WL 2397439, at *1 (W.D. Wash. Apr. 4, 2018) (deeming allegation of willfulness admitted on default); *FameFlynet, Inc. v. Feel the Piece, LLC*, No. CV 17-5406 FMO (GJSX), 2018 WL 4850383, at *3 (C.D. Cal. Feb. 21, 2018) ("A court may infer willfulness even where a defendant defaults."); *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) ("[A]ll factual allegations in the complaint are deemed true, including the allegation of Poof's willful infringement."). Even if this were not the case, however, the

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANT CLAUDIU-FLORENTIN
AND SUPPORTING MEMORANDUM - 12 -
NO. 2:21-cv-01114

**Kilpatrick Townsend & Stockton, LLP**
1420 Fifth Avenue, Suite 3700, Seattle, Washington 98101
Phone: 206.467.9600

record contains ample factual basis for a finding of willfulness here. *See, e.g.*, Dkt. 18 ¶¶ 38, 43; *see generally* Barker Decl. In sum, Bungie has established Claudiu-Florentin's liability for willful copyright infringement.

### b. Bungie Has Established Claudiu-Florentin's Liability for Circumvention of Technological Measures.

The second and third *Eitel* factors also favor entry of default judgment for Bungie's circumvention claims under 17 U.S.C. § 1201. Section 1201(a) prohibits "circumvent[ion] [of] a technological measure that effectively controls access to a work protected under this title" as well as trafficking in any "technology, product, service, device, component, or part thereof," that:

(A) is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title;

(B) has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected under this title; or

(C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing a technological measure that effectively controls access to a work protected under this title.

17 U.S.C. § 1201(a)(1), (2).[4]

Claudiu-Florentin and the other Defendants circumvented Bungie's anti-cheat measures designed to (a) prevent unauthorized access to the data in *Destiny 2*, including reading and writing to the data and making unauthorized copies, (b) monitor for and prevent unauthorized execution of software operations, and (c) monitor for and prevent manipulation of game functionality (*e.g.*, firing a weapon) to gain an unfair advantage. Dkt. 18 ¶¶ 35, 43; Barker Decl. ¶¶ 6, 17-25. In normal operations, these measures

---

[4] To circumvent a technological measure is to "avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner." 17 U.S.C. § 1201(a)(3). Relatedly, a technological measure "effectively controls access to a work" if, in the ordinary course, it "requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work." *Id.*

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANT CLAUDIU-FLORENTIN
AND SUPPORTING MEMORANDUM - 13 -
NO. 2:21-cv-01114

**Kilpatrick Townsend & Stockton, LLP**
1420 Fifth Avenue, Suite 3700, Seattle, Washington 98101
Phone: 206.467.9600

effectively control unauthorized access to *Destiny 2*. Barker Decl. ¶ 6. Not only do the Cheats bypass these measures, but they also interfere with Bungie's ability to identify and block access to hardware that has been banned for cheating. Dkt. 18 ¶ 43; Barker Decl. ¶ 29. As Claudiu-Florentin expressly informed visitors to the Website, he and the other Defendants designed and promoted the Cheats for the express purpose of bypassing Bungie's "complex anti-cheat" and "directly inject[ing] code into the game memory," thus "provid[ing] an array of features" that are not part of *Destiny 2*. Dkt. 18 ¶¶ 35, 38-39; Varas Decl. ¶ 10, Ex. 9; Barker Decl. ¶¶ 28, 35. The Cheats serve no legitimate or authorized purpose. Barker Decl. ¶¶ 29-31. Knowing the Cheats would enable users to bypass Bungie's anti-cheat measures, Claudiu-Florentin marketed the Cheats on the Website and used Stripe to process payments. Barker Decl. ¶¶ 26-27, 31-33, Ex. 5; Varas Decl. ¶¶ 9-10, Exs. 6-9.

These acts establish Claudiu-Florentin's liability for circumvention and trafficking in violation of 17 U.S.C. §1201(a). Claudiu-Florentin "circumvent[ed] a technological measure that effectively controls access to a work protected under [Title 17]"—*i.e.*, Bungie's copyrighted *Destiny 2* works—then "(1) traffic[ked] in (2) a technology or part thereof (3) that is primarily designed, produced, or marketed for, or has limited commercially significant use other than (4) circumventing a technological measure (5) that effectively controls access (6) to a copyrighted work." *MDY Indus. LLC v. Blizzard Ent. Inc.*, 629 F.3d 928, 953 (9th Cir. 2010). Bungie has established Claudiu-Florentin's liability for circumvention under 17 U.S.C. § 1201(a).

### c. Bungie Has Established Claudiu-Florentin's Liability for Breach of Contract and Tortious Interference with Contractual Relations

The second and third *Eitel* factors also favor default judgment for Bungie's claims for breach of contract and tortious interference with contractual relations. To prove breach of contract, Bungie must establish the existence of a contract that imposes a duty,

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANT CLAUDIU-FLORENTIN
AND SUPPORTING MEMORANDUM - 14 -
NO. 2:21-cv-01114

**Kilpatrick Townsend & Stockton, LLP**
1420 Fifth Avenue, Suite 3700, Seattle, Washington 98101
Phone: 206.467.9600

a breach of that duty, and damages. *Myers v. State*, 152 Wash. App. 823, 826, 218 P.3d 241, 243 (Wash. Ct. App. 2009) (reciting elements of a breach of contract claim). Bungie's Amended Complaint, which is well pleaded, alleges the existence of an enforceable contract—the LSLA, which contains terms that Claudiu-Florentin and the other Defendants were required to accept when they first downloaded and played *Destiny 2*. Dkt. 18 ¶¶ 13, 26, 28, 46, 81-88; Barker Decl. ¶¶ 18-20, Ex. 3. Under those terms, users have a duty not to hack, reverse engineer, or decompile *Destiny 2*, modify the game or create derivatives of it, exploit any part of *Destiny 2* commercially, or use or provide unauthorized software programs to gain, or allow others to gain, an unfair advantage in any online or multiplayer game modes. Dkt. 18 ¶¶ 26-27; Barker Decl. ¶¶ 18-20, Ex. 3. The Amended Complaint further alleges that Claudiu-Florentin performed each of these prohibited acts, thus breaching his duties under the LSLA and causing damage to Bungie. Dkt. 18 ¶¶ 81-88.

Bungie also has established that Claudiu-Florentin tortiously interfered with Bungie's contractual relations. Bungie's claim for tortious interference requires it to show: (1) the existence of a valid contractual relationship; (2) Claudiu-Florentin's knowledge of that relationship; (3) his intentional interference with that relationship by inducing or causing a breach; (4) Claudiu-Florentin's improper purpose or improper means; and (5) resulting damage to Bungie. *Leingang v. Pierce Cnty. Med. Bureau, Inc.*, 131 Wash. 2d 133, 157, 930 P.2d 288, 300 (Wash. 1997) (en banc). Each of those elements is satisfied here. The LSLA is a valid contract between Bungie and *Destiny 2* players. *See* Barker Decl. ¶¶ 18, 26, Ex. 3. Having executed the LSLA, as he was required to do, Claudiu-Florentin was well aware of its terms, yet intentionally interfered with that Bungie's and its users' contractual relationships by supplying cheat software that he knew would hack and modify *Destiny 2*. Dkt. 18 ¶¶ 89-97. His improper purpose was to profit from Bungie's intellectual property, and as shown above, his means were

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANT CLAUDIU-FLORENTIN
AND SUPPORTING MEMORANDUM - 15 -
NO. 2:21-cv-01114

**Kilpatrick Townsend & Stockton, LLP**
1420 Fifth Avenue, Suite 3700, Seattle, Washington 98101
Phone: 206.467.9600

improper because they violated the Copyright Act. Finally, Claudiu-Florentin's actions damaged Bungie by requiring it to incur costs to defend against the Cheats, depriving it of revenue derived from players banned for using the Cheats, and subjecting it to reputational harm when honest players were deterred from playing *Destiny 2*. Barker Decl. ¶¶ 14-15, 31, 34-37. In sum, Bungie has established Claudiu-Florentin's liability for breach of contract and tortious interference with contractual relations under Washington law.

### d. Bungie Has Established Claudiu-Florentin's Liability for Violating the Washington Consumer Protection Act.

Finally, the second and third *Eitel* factors favor default judgment for Bungie's claim under the Washington Consumer Protection Act ("WCPA") as well. To prevail in a private cause of action under the WCPA, Bungie must establish: "(1) [Claudiu-Florentin's] unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to [its] business or property, and (5) causation." *Panag v. Farmers Ins. Co. of Wash.*, 166 Wash. 2d 27, 37, 204 P.3d 885, 889 (Wash. 2009) (citation omitted). To establish that Claudiu-Florentin's actions were unfair and deceptive, Bungie "need not show the act in question was intended to deceive, only that it had the capacity to deceive a substantial portion of the public." *Id.* at 47 (citing *Leingang*, 131 Wash.2d at 150, 930 P.2d at 297). That act can be "a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest." *Klem v. Wash. Mut. Bank*, 176 Wash. 2d 771, 787, 295 P.3d 1179, 1187 (Wash. 2013).

Bungie has satisfied each of these elements. First, the development, use, and sale of cheat software deceives both Bungie and the gaming public, thus affecting the public interest. Bungie has a legitimate expectation that its players are playing the game

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANT CLAUDIU-FLORENTIN
AND SUPPORTING MEMORANDUM - 16 -
NO. 2:21-cv-01114

**Kilpatrick Townsend & Stockton, LLP**
1420 Fifth Avenue, Suite 3700, Seattle, Washington 98101
Phone: 206.467.9600

honestly, and tens of millions of *Destiny 2* players expect an honest, fair experience. Barker Decl. ¶ 12. All are deceived. *Id.* ¶¶ 12-15. Second, Claudiu-Florentin is clearly engaging in a commercial enterprise by offering the Cheats for sale at "high prices" on the Website. Dkt. 18 ¶ 38; Varas Decl. ¶ 10, Ex. 9. *See* RCW 19.86.010(2), (3) (defining "trade" and "commerce" to "include the sale of assets," namely, "any property, tangible or intangible, real, personal, or mixed, and wherever situate[d], and any other thing of value"). Finally, Claudiu-Florentin's actions have caused injury to Bungie's business, including its revenue from *Destiny 2* and, more broadly, its reputation and community goodwill. Barker Decl. ¶¶ 14-16, 31, 34-37; Dkt. 18 ¶¶ 42, 50. Claudiu-Florentin's conduct also is unlawful, and "[w]hat is illegal and against public policy is per se an unfair trade practice." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 786, 719 P.2d 531 (Wash. 1986) (alteration in original) (citation omitted). Bungie therefore is entitled to default judgment on this claim as well.

### 3. The Fourth *Eitel* Factor Favors Bungie Because Claudiu-Florentin's Conduct Warrants the Damages Bungie Seeks.

The fourth *Eitel* factor favors default judgment because the damages Bungie seeks are reasonable in light of Claudiu-Florentin's willful conduct in directing an illegal enterprise. Although courts are more cautious when large damage awards are involved, "the court must consider the amount of money at stake in relation to the seriousness of Defendant['s] conduct." *PepsiCo, Inc.,* 238 F. Supp. 2d at 1176. Claudiu-Florentin's conduct involves blatant illegality, thus entitling Bungie to the award it seeks. *See* Section D, *infra*.

### 4. The *Fifth Eitel* Factor Favors Bungie Because the Facts are Undisputed.

Finally, the fifth *Eitel* factor favors entry of default judgment as well. By consciously declining to participate in this litigation despite acknowledging service of

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANT CLAUDIU-FLORENTIN
AND SUPPORTING MEMORANDUM - 17 -
NO. 2:21-cv-01114

**Kilpatrick Townsend & Stockton, LLP**
1420 Fifth Avenue, Suite 3700, Seattle, Washington 98101
Phone: 206.467.9600

1   process on two separate occasions, Claudiu-Florentin has admitted the scope and the

2   extent of his participation in the illicit enterprise at the heart of this case. Because default

3   has been entered, "the court must take the plaintiff's factual allegations as true." *Curtis*,

4   33 F. Supp. 3d at 1212. In any event, Bungie has supported its claims with substantial

5   evidence, indicating the material facts would not be disputed even if Claudiu-Florentin

6   had decided to appear. *See Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d

7   916, 922 (C.D. Cal. 2010) (finding no possibility of factual dispute where plaintiff

8   "supported its claims with ample evidence, and defendant has made no attempt to

9   challenge the accuracy of the allegations in the complaint"). This factor, too, favors grant

10  of Bungie's Motion.

> **D.    The Court Should Award Bungie $146,662.28 in Actual Damages on Its Copyright Claim, $11,696,000 in Statutory Damages on its Circumvention Claims, and $217,250.70 in Attorney's Fees and Costs, Plus Fees and Costs Incurred After Submission of this Motion.**

14          The award Bungie seeks in this case is large because Claudiu-Florentin's blatantly

15  unlawful conduct caused Bungie substantial harm under several applicable laws. As the

16  Ninth Circuit has repeatedly held, when the applicable laws are enacted for different

17  purposes and provide for different types of damages, there is no concern for double

18  recovery. *See Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1011 (9th Cir.

19  1994) ("Congress created two separate statutory schemes to govern copyrights and

20  trademarks; in order to effectuate the purposes of both statutes, damages may be awarded

21  under both."); *Seattle Pac. Indus., Inc. v. S3 Holding LLC*, 831 F. App'x 814, 818 (9th

22  Cir. 2020) (finding no error in "awarding both liquidated damages for breach of contract

23  and actual damages for trademark infringement" because "the awards address separate

24  conduct and separate injuries").

25          The Copyright Act and the Digital Millennium Copyright Act "'protect different

26  interests'—that is, they create separate tort causes of action designed to remedy different

---

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANT CLAUDIU-FLORENTIN
AND SUPPORTING MEMORANDUM - 18 -
NO. 2:21-cv-01114

**Kilpatrick Townsend & Stockton, LLP**
1420 Fifth Avenue, Suite 3700, Seattle, Washington 98101
Phone: 206.467.9600

harms," and thus awards under these statutes "compensate distinct injuries." *GC2 Inc. v. Int'l Game Tech.*, 391 F. Supp. 3d 828, 851 (N.D. Ill. 2019) (quoting *Agence Fr. Presse v. Morel*, No. 10-cv-2730 (AJN), 2014 WL 3963124, at *10 (S.D.N.Y. Aug. 13, 2014)); *cf. Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 443 (2d Cir. 2001) ("[T]he DMCA targets the circumvention of digital walls guarding copyrighted material (and trafficking in circumvention tools), but does not concern itself with the use of those materials after circumvention has occurred," as the Copyright Act does). In addition, "when infringement is willful, the statutory damages award may be designed to penalize the infringer and to deter future violations," and therefore "statutory damages may serve completely different purposes than actual damages." *Nintendo of Am.*, 40 F.3d at 1011 (citation omitted). As discussed below, Bungie seeks to recover damages under separate statutes, serving separate purposes, to redress separate harms. All are recoverable here.

### 1. The Court Should Award Bungie $146,662.28 in Actual Damages on Its Copyright Claim.

Under 17 U.S.C. 504(a), "an infringer of copyright is liable for either "the copyright owner's actual damages and any additional profits of the infringer" or statutory damages. "Actual damages" consist of "the actual damages suffered by [the plaintiff] as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). "In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." *Id.* "[T]he purpose of § 504(b) is to compensate fully a copyright owner for the misappropriated value of its property and 'to avoid unjust enrichment by defendants, who would otherwise benefit from this component of profit through their unlawful use of another's work.'" *Minx Int'l, Inc. v. M.R.R. Fabric*, No. CV 13-5947

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANT CLAUDIU-FLORENTIN
AND SUPPORTING MEMORANDUM - 19 -
NO. 2:21-cv-01114

**Kilpatrick Townsend & Stockton, LLP**
1420 Fifth Avenue, Suite 3700, Seattle, Washington 98101
Phone: 206.467.9600

PSG (CWX), 2015 WL 12645752, at *5 (C.D. Cal. Feb. 11, 2015) (citing *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 718 (9th Cir. 2004) (citation omitted)).

Pursuant to the Court's September 6, 2022, Order, Dkt. 31, Bungie conducted post-default discovery by serving a subpoena on Stripe, a payment processing company. Varas Decl. ¶ 8, Ex. 5. That subpoena sought information concerning "any software or application incorporating the terms 'Destiny', 'HLBOT', or 'Razor' in the product name or transaction history" sold by Claudiu-Florentin or in association with the domain name <veterancheats.com> and associated email addresses and phone numbers. *Id.* In response to the subpoena, Stripe produced data on thousands of sales of Cheats, including 5,848 separate transactions identifying subscriptions for either a *Destiny 2* Cheat or a premium cheat product containing *Destiny 2* as an option. *Id.* ¶¶ 9, Exs. 6-8. Between November 2020 and July 2022, Claudiu-Florentin and the other Defendants received approximately $146,662.28 for those transactions. Varas Decl. ¶ 9, Ex. 7; Barker Decl. ¶ 33, Ex. 5.

This entire amount is recoverable here, as 17 U.S.C. § 504(a) places the burden firmly on Claudiu-Florentin to prove any deductions and apportion any profits not attributable to the inclusion of *Destiny 2*. *See* 17 U.S.C. § 504(b) ("[T]he infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."). This allocation of responsibility makes sense, as Bungie lacks access to Claudiu-Florentin's records, and any resulting uncertainty is entirely due to his decision not to defend Bungie's claims. Claudiu-Florentin cannot avoid his statutory burden by refusing to participate in litigation. Bungie is entitled to an award of $146,662.28 in actual damages on its copyright claim.

**2.   The Court Should Award Bungie $11,696,000 in Statutory Damages on Its Circumvention Claims.**

A person engaging in circumvention in violation of 17 U.S.C. § 1201(a) is liable for either "the actual damages and any additional profits of the violator" or statutory

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANT CLAUDIU-FLORENTIN
AND SUPPORTING MEMORANDUM - 20 -
NO. 2:21-cv-01114

**Kilpatrick Townsend & Stockton, LLP**
1420 Fifth Avenue, Suite 3700, Seattle, Washington 98101
Phone: 206.467.9600

damages. 17 U.S.C. § 1203(c)(1). A plaintiff electing to receive statutory damages is entitled to "an award . . . for each violation of section 1201 in the sum of not less than $200 or more than $2,500 per act of circumvention, device, product, component, offer, or performance of service, as the court considers just." 17 U.S.C. § 1203(c)(3). In awarding damages in this statutory range, courts consider factors including "profits reaped by defendant in connection with the infringement; revenues lost to the plaintiff; and the willfulness of the infringement" as well as "the goal of discouraging wrongful conduct." *Sony Comput. Ent. Am., Inc. v. Filipiak*, 406 F. Supp. 2d 1068, 1075 (N.D. Cal. 2005).

Here, Claudiu-Florentin's actions were so clearly willful and unlawful as to justify awarding at least $2,000 per each of the 5,848 Cheats documented in the Stripe production, for a total of $11,696,000. Dkt. 18 ¶¶ 60, 68, 78; Barker Decl. ¶¶ 28, 33, Ex. 5. First, there is Circuit precedent for using this $2,000 amount. *See Philips N. Am. LLC v. KPI Healthcare, Inc.*, No. SACV 19-1765 JVS (JDEx), 2021 WL 6103527, at *1, *8 (N.D. Cal. Sept. 1, 2021)  (where the defendant "hack[ed] into Philips's proprietary software in the ultrasound systems to modify, tamper with, and alter the systems to enable unlicensed software features," sold those "modified systems for a profit," and modified system identifiers to "hide their illegal conduct," finding these "acts of circumvention are severe" and awarding "$2,000 per device"). Second, the number of unlawful transactions at issue, while large, does not fully account for the damages Bungie sustained as a result of Claudiu-Florentin's acts of circumvention.

Although Bungie is unable to precisely calculate the amount of this damage, it has spent more than $2,000,000 on cheat mitigation (including staffing and software) since November 2020, when Stripe recorded Claudiu-Florentin's first transaction involving a *Destiny 2* Cheat. Barker Decl. ¶¶ 33, 36, Ex. 5. In addition, the number of unique transactions in the Stripe production actually underestimates the extent of Claudiu-Florentin's participation in the VeteranCheats.com enterprise. First, the 5,848 figure does

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANT CLAUDIU-FLORENTIN
AND SUPPORTING MEMORANDUM - 21 -
NO. 2:21-cv-01114

**Kilpatrick Townsend & Stockton, LLP**
1420 Fifth Avenue, Suite 3700, Seattle, Washington 98101
Phone: 206.467.9600

not include Claudiu-Florentin's own circumventions of account bans and his own

repeated uses of the Cheats, each of which represents an independent act of

circumvention. *Id.* ¶ 33. Second, the 5,848 figure does not include the thousands of acts

of circumvention perpetrated by Claudiu-Florentin's customers each time they loaded the

Cheats and used them to play *Destiny 2* for almost two years. *Id.*; *see Philips N. Am.*,

2021 WL 6103527, at *8 ("[I]t is clear that each modification of the systems' software to

provide access to unlicensed software is a circumvention of technological measures.").

Under these circumstances, an award of $11,696,000 in statutory damages is entirely

appropriate. Indeed, if Claudiu-Florentin's conduct does not justify a substantial award, it

is difficult to imagine what circumstances ever could.

### 3.   Bungie is Entitled to Recover its Attorney's Fees and Costs.

Section 505 of the Copyright Act gives this Court the discretion to award "full

costs" as well as "a reasonable attorney's fee to the prevailing party as part of the costs,"

17 U.S.C. § 505, as does the Washington Consumer Protection Act. *See* RCW 19.138.280

("[A] person who is injured by a violation of this chapter may bring an action for

recovery of actual damages, including court costs and attorneys' fees."). In determining

whether to award attorneys' fees under Section 505, courts may consider such factors as

"frivolousness, motivation, objective unreasonableness . . . and the need in particular

circumstances to advance considerations of compensation and deterrence." *Fogerty v.*

*Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994); *see also Kirtsaeng v. John Wiley & Sons,*

*Inc.*, 579 U.S. 197, 203 (2016) (instructing courts to give objective reasonableness

"substantial" but not dispositive weight).

To date, Bungie has incurred $217,250.70 in attorney's fees and costs, all of

which were incurred in the process of litigating this action. Barker Decl. ¶ 37. Bungie

brought this action to defend its copyrights in *Destiny 2*—and indeed, its entire "free-to-

play" model—from Claudiu-Florentin's and the other Defendants' scheme to breach its

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANT CLAUDIU-FLORENTIN
AND SUPPORTING MEMORANDUM - 22 -
NO. 2:21-cv-01114

**Kilpatrick Townsend & Stockton, LLP**
1420 Fifth Avenue, Suite 3700, Seattle, Washington 98101
Phone: 206.467.9600

1   technological controls, infringe its copyrights in *Destiny 2*, induce its players to cheat,

2   and compromise game play for thousands of honest players around the globe. In light of

3   the evidence of record, Bungie's factual and legal positions are manifestly reasonable,

4   and its case for compensation and deterrence are particularly strong on these facts.

5   Bungie respectfully suggests that an award of its attorneys' fees and costs is both

6   necessary and appropriate. *See Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033,

7   1043 (9th Cir. 2018) (reversing district court's denial of attorneys' fees where defendant

8   "admitted to regularly using BitTorrent to download media without permission,"

9   observing that "this was not 'a close and difficult case'" (citation omitted)).

10              **E.     The Court Should Issue a Permanent Injunction.**

11              The Copyright Act gives this Court the authority to "grant [a] . . . final

12   injunction[] on such terms as it may deem reasonable to prevent or restrain infringement

13   of a copyright." 17 U.S.C. § 502(a). The Digital Millennium Copyright Act also allows

14   courts to grant "permanent injunctions on such terms as it deems reasonable to prevent or

15   restrain a violation." 17 U.S.C. § 1203(b)(1). A permanent injunction is warranted where

16   a plaintiff demonstrates that: (1) it has suffered irreparable injury; (2) monetary damages

17   are inadequate to compensate for that injury; (3) the balance of hardships between the

18   parties favors a remedy in equity; and (4) the public interest would not be disserved by

19   entry of a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391

20   (2006). All four factors are met here.

21              **1.     Bungie Has Suffered Irreparable Harm.**

22              As established by Bungie's Amended Complaint and supporting evidence,

23   Claudiu-Florentin's unlawful activity has disrupted Bungie's business relationships,

24   caused it to lose current and prospective customers, and damaged its brand and

25   reputation. *See, e.g.*, Dkt. 18 ¶ 42 ("Might quit Destiny 2 at this rate if it doesn't change .

26   . . I am kinda done until this is patched. Sorry."); *see also id.* ¶¶ 50, 51, 61, 69, 79; Barker

Decl. ¶¶ 14-15, 31, Exs. 2, 4. This type of showing is more than sufficient to establish

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANT CLAUDIU-FLORENTIN
AND SUPPORTING MEMORANDUM - 23 -
NO. 2:21-cv-01114                                    **Kilpatrick Townsend & Stockton, LLP**
                                                    1420 Fifth Avenue, Suite 3700, Seattle, Washington 98101
                                                    Phone: 206.467.9600

irreparable harm. *Getty Images (U.S.), Inc. v. Virtual Clinics*, No. C13–0626JLR, 2014 WL 1116775, at *6 (W.D. Wash. Mar. 20, 2014) ("[I]rreparable harm . . . may be shown where there is '[j]eopardy to a company's competitive position caused by copyright infringement,' or where there is 'the threat of the loss of prospective customers, goodwill, or reputation.'" (citation omitted)). That is because loss of prospective customers and goodwill cannot be easily reduced to a dollar figure. *See CytoSport, Inc. v. Vital Pharms., Inc.*, 617 F. Supp. 2d 1051, 1080 (E.D. Cal. 2009) (copyright infringement may specifically constitute irreparable harm "in the loss of control of a business'[s] reputation" and in the "loss of trade and . . . goodwill"), *aff'd,* 348 F. App'x 288 (9th Cir. 2009); *eBay Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1066 (N.D. Cal. 2000) ("Harm resulting from lost profits and lost customer goodwill is irreparable because it is neither easily calculable, nor easily compensable and is therefore an appropriate basis for injunctive relief."). This factor therefore favors issuance of a permanent injunction.

### 2.   Monetary Damages Alone Are an Inadequate Remedy.

"[T]he requisite analysis for [this] factor . . . inevitably overlaps with that of the first." *MercExchange L.L.C. v. eBay, Inc.*, 500 F. Supp. 2d 556, 582 (E.D. Va. 2007). That is, given the difficulty of calculating Bungie's lost sales and the harm to its goodwill, an award of monetary damages alone would be inadequate to compensate the injuries Claudiu-Florentin has caused Bungie. "[L]oss of sales is notoriously difficult to calculate, making money damages an inadequate remedy." *Edwards Vacuum, LLC v. Hoffman Instrumentation Supply, Inc.*, 538 F. Supp. 3d 1132, 1146 (D. Or. 2021) (alteration in original) (citation omitted). In addition, "[a] remedy may be inadequate if it cannot be collected," *Getty Images*, 2014 WL 1116775, at *6, as where the defendant is insolvent or, as here, resides outside the United States.

A permanent injunction also may be necessary to put a stop to the infringing conduct. Here, Claudiu-Florentin's refusal to participate in this case should "not reassure

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANT CLAUDIU-FLORENTIN
AND SUPPORTING MEMORANDUM - 24 -
NO. 2:21-cv-01114

**Kilpatrick Townsend & Stockton, LLP**
1420 Fifth Avenue, Suite 3700, Seattle, Washington 98101
Phone: 206.467.9600

the Court that [he] has stopped . . . infring[ing] Plaintiff['s] Work or will voluntarily do so in the future." *Eve Nev., LLC v. Derbyshire*, No. 21-0251-LK, 2022 WL 279030, at *8 (W.D. Wash. Jan. 31, 2022); *see also Hunter Killer Prods., Inc. v. Zarlish*, No. 19-00168-LEK-KJM, 2020 WL 3980117, at *5 (D. Haw. June 15, 2020), (defendant's refusal to participate in the case provided "no reassurance that Defendant . . . will stop making software applications available to the public through his website infringing on Plaintiffs' copyrighted Works"), *report and recommendation adopted*, No. CV 19-00168 LEK-KJM, 2020 WL 3977607 (D. Haw. July 14, 2020); *Hearst Holdings, Inc. v. Kim*, No. CV07-4642-GAF (JWJx), 2008 WL 11336137, at *7 (C.D. Cal. Aug. 17, 2008) (defendants' "failure to respond in any way to this action does not reassure the Court that [they] have stopped infringing Plaintiffs' copyrights, which is yet another reason why granting a permanent injunction to enjoin them from further infringement is appropriate"). Thus, this factor also weighs in favor of a permanent injunction.

### 3. The Balance of Equities Strongly Favors a Permanent Injunction.

Claudiu-Florentin has no legitimate interest in continuing to profit from his exploitation and abuse of Bungie's work. "Since Defendant never had a right to do this in the first place, [he] suffers no hardship by entry of a permanent injunction." *Eve Nev.*, 2022 WL 279030, at *9; *see Windsurfing Int'l Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected.") By contrast, in the absence of a permanent injunction, Bungie will continue to suffer irreparable harm as a result of Claudiu-Florentin's willful misconduct. The balance of harms tips decidedly in Bungie's favor. *See Getty Images*, 2014 WL 1116775, at *7 ("Because there is no legitimate purpose for the Camps' infringement and there is a threat to Getty's business, the balance of hardships favors Getty.").

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANT CLAUDIU-FLORENTIN
AND SUPPORTING MEMORANDUM - 25 -
NO. 2:21-cv-01114

**Kilpatrick Townsend & Stockton, LLP**
1420 Fifth Avenue, Suite 3700, Seattle, Washington 98101
Phone: 206.467.9600

**4.   The Public Interest Is Served by Entry of a Permanent Injunction.**

Finally, "[c]ourts usually find that 'the public interest is . . . served when the rights of copyright holders are protected against acts likely constituting infringement.'" *Getty Images*, 2014 WL 1116775, at *7 (citation omitted). This is particularly true where, as here, a defendant engages in conduct that obviously threatens creative endeavor. As this Court held on analogous facts in *Eve Nevada*, "[p]irating and distributing dozens of copies of [a copyrighted] film—does not 'promote the Progress of Science and useful Arts,'" but is "the digital equivalent of standing outside the neighborhood Redbox—or Blockbuster Video, for fans of history—and giving away copies of the movie for free." *Eve Nev.*, 2022 WL 279030, at *9. Claudiu-Florentin's illicit enterprise, built on stealing, hacking, and profiting from cheaters, poses a similar threat to the public good.

In sum, all four *eBay* factors support the entry of permanent injunction against Claudiu-Florentin. Bungie has suffered irreparable injury and cannot be adequately compensated by monetary damages. No legitimate interest would be served by allowing Claudiu-Florentin to continue his unlawful behavior, while Bungie will suffer significant hardship in the absence of a permanent injunction. And the public interest would be well served by stopping Claudiu-Florentin from "sneer[ing] in the face of copyright owners and copyright laws." *See Tu v. TAD Sys. Tech. Inc.*, No. 08-CV-3822(SLT)(RM), 2009 WL 2905780, at *6 (E.D.N.Y. Sept. 10, 2009) (citation and internal quotation marks omitted).

## III.   CONCLUSION

For all of the foregoing reasons, Bungie respectfully requests that the Court enter a default judgment against Claudiu-Florentin; award monetary damages to Bungie in the amount of $12,059,912.98 (statutory damages, actual damages, and attorneys' fees and costs), plus attorney's fees and costs incurred after submission of this Motion; and issue a permanent injunction against Claudiu-Florentin as shown in the attached Proposed Order.

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANT CLAUDIU-FLORENTIN
AND SUPPORTING MEMORANDUM - 26 -
NO. 2:21-cv-01114

**Kilpatrick Townsend & Stockton, LLP**
1420 Fifth Avenue, Suite 3700, Seattle, Washington 98101
Phone: 206.467.9600

1

2      DATED: February 7, 2023                Respectfully Submitted,

3                                             **KILPATRICK TOWNSEND & STOCKTON LLP**

4
                                             */s/ Christopher Varas*
5                                             Christopher Varas (WA Bar No. 32875)
                                             Kilpatrick Townsend & Stockton LLP
6                                             1420 Fifth Avenue, Suite 3700
                                             Seattle, WA 98101
7                                             Telephone: 206.516.3088
                                             Facsimile: 206.623.6793
8                                             *cvaras@kilpatricktownsend.com*

9
                                             *Admitted Pro Hac Vice*
10                                            Crystal Genteman
                                             1100 Peachtree Street NE, Suite 2800
11                                            Atlanta, GA 30309
                                             Telephone: 404.815.6500
12                                            *cgenteman@kilpatricktownsend.com*

13
                                             *Attorneys for Plaintiff Bungie, Inc.*
14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANT CLAUDIU-FLORENTIN
AND SUPPORTING MEMORANDUM - 27 -
NO. 2:21-cv-01114

**Kilpatrick Townsend & Stockton, LLP**
1420 Fifth Avenue, Suite 3700, Seattle, Washington 98101
Phone: 206.467.9600