1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

11

BUNGIE, INC., a Delaware corporation,

12

Plaintiff,

v.

13

MIHAI CLAUDIU-FLORENTIN, an
individual, d/b/a
VETERANCHEATS.COM, et al.,

14

15

Defendants.

16

CASE NO. 2:21-cv-01114-TL

ORDER ON MOTION FOR
DEFAULT JUDGMENT AGAINST
DEFENDANT CLAUDIU-
FLORENTIN

17        This matter comes before the Court on Plaintiff Bungie, Inc.'s Motion for Default

18   Judgment against Defendant Mihai Claudiu-Florentin. Dkt. Nos. 37 (sealed), 38 (public). Having

19   reviewed the Motion, the Court GRANTS the Motion in part, ENTERS default judgment, and

20   PERMANENTLY ENJOINS Claudiu-Florentin on the terms specified below.

21                          I.      BACKGROUND

22        Operating out of Bellevue, Washington, Bungie develops, distributes, and owns the

23   intellectual property rights to a video game called "Destiny 2." Dkt. No. 18 ¶¶ 1, 8. Bungie

24   alleges that Claudiu-Florentin, a resident of Romania, developed and sold cheat software that

"hacks" the Destiny 2 software to allow players a competitive advantage against other players in violation of Bungie's software license agreement ("LSLA"). *Id.* ¶¶ 3–4. Claudiu-Florentin used his website, Veterancheats.com, to market and sell the hack.[1] *Id.* ¶¶ 33–37. Bungie alleges that the VeteranCheats Hack infringes on four copyrights: (1) Destiny 2 code (a literary work), registration No. TX 8-933-655; (2) Destiny 2: Beyond Light (a literary work) registration No. TX 8-933-658; (3) Destiny 2 (audiovisual work) registration PA 2-282-670; and (4) Destiny 2: Beyond Light (audiovisual work) registration PA 2-280-030. *Id.* ¶ 21. Bungie also alleges that Claudiu-Florentin has used copyrighted imagery from Destiny 2 to sell the VeteranCheats Hack without Bungie's authorization. *Id.* ¶ 44. And Bungie alleges that the VeteranCheats Hack breaches the LSLA and contains measures intended to avoid, bypass, and impair Bungie's technological measures that control access to the copyrighted works at issue in this case. *Id.* ¶¶ 48–49.

Bungie asserts the following claims against Claudiu-Florentin: (1) copyright infringement; (2) violations of the Digital Millennium Copyright Act ("DMCA"); (3) breach of contract; (4) intentional interference with contractual relations; and (5) violations of the Washington Consumer Protection Act ("CPA"). *Id.* ¶¶ 53–102. Bungie seeks entry of default judgment on all claims, asking for judgment to be entered in the amount of $12,059,912.98. This represents the sum of: (1) $11,696,000 in statutory damages under the DMCA; (2) $146,662.28 in actual damages for copyright infringement; and (3) $217,250.70 in attorneys' fees and costs. Bungie also asks for entry of a permanent injunction barring Claudiu-Florentin from engaging in future or further conduct that forms the basis of its Copyright Act and DMCA claims in this action.

---

[1] The Court refers to Claudiu-Florentin's hack as the VeteranCheats Hack.

Bungie alleges that notwithstanding its anti-cheating efforts, the VeteranCheats Hack has caused it harm by diminishing the enjoyment of the game for those not cheating and reducing its potential revenue from in-game sales to players. *Id.* ¶¶ 29–32, 42, 49–51. Bungie's Deputy General Counsel, James Barker, also explains the nature of its anti-cheat circumvention efforts and the "minimum of $2,000,000 on game security staffing and software" that it has expended to combat the VeteranCheats Hack and other cheating devices of Destiny 2. Dkt. No. 38-1 ¶¶ 1, 6, 10, 17–25, 36. Through a subpoena of Stripe, Inc., Bungie obtained transactional data associated with VeteranCheats which Barker avers shows 5,848 separate transactions of the VeteranCheats Hack that produced $146,662.28 in sales revenue to Claudiu-Florentin from November 2020 to July 2022. *Id.* ¶ 33.

## II.   ANALYSIS

### A.   Legal Standard

The Court has already found Claudiu-Florentin in default. Dkt. Nos. 25, 26, 29. After entry of default, the Court may enter a default judgment. Fed. R. Civ. P. 55(b). This determination is discretionary. *See Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988). "Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In performing this analysis, "the general rule is that well-pled allegations in the complaint regarding liability are deemed true." *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906

(9th Cir. 2002) (quotation and citation omitted). And "[t]he district court is not required to make detailed findings of fact." *Id.*

**B.     Jurisdiction**

Before entering default judgment, the Court must assure itself that it has subject matter jurisdiction and personal jurisdiction.

There is little doubt that the Court has subject matter jurisdiction over Bungie's claims. Bungie brings claims under various federal laws, which fall within the Court's original jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a). The Court has supplemental jurisdiction over Bungie's state-law claims pursuant to 28 U.S.C. § 1367(a).

The Court also finds that it has personal jurisdiction over Claudiu-Florentin. A valid contractual forum selection clause to which a defendant has consented may satisfy personal jurisdiction. *See Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 458 (9th Cir. 2007) (noting that a forum selection clause may give rise to a waiver of objection provided the defendant agreed to be bound). Bungie has provided evidence that Claudiu-Florentin agreed to the terms of Bungie's LSLA, which required Claudiu-Florentin to "agree to submit to the personal jurisdiction of any federal or state court in King County, Washington." Dkt. No. 18 ¶ 13. The Court accepts as true that Claudiu-Florentin agreed to these terms, given the well-pleaded allegations in the Amended Complaint. And the additional evidence submitted strongly suggests that Claudiu-Florentin had to have agreed to the LSLA in order to develop and refine the VeteranCheats Hack. Dkt. No. 38-1 ¶¶ 18–19.

**C.     *Eitel* Factors Favor Default Judgment**

The Court reviews the *Eitel* factors to assess whether default judgment should be entered and in what specific amounts. The seven *Eitel* factors weigh in favor of entry of default judgment

in Bungie's favor. But the Court finds that the judgment shall not be entered as to all claims or in the full amount Bungie requests.

### 1.   Factor One: Prejudice to Bungie

Without entry of default judgment Bungie will be prejudiced. Bungie has attempted to litigate this case and vindicate its rights under federal and state law against Claudiu-Florentin. Claudiu-Florentin has failed to appear or participate in this litigation despite being personally served. Bungie faces prejudice by not being able to obtain complete relief on its claims against Claudiu-Florentin without entry of default judgment. This factor weighs in favor of granting default judgment.

### 2.   Factors Two and Three: Merits of Bungie's Claims and Sufficiency of Complaint

Bungie has demonstrated the merit of its claims and the sufficiency of the amended complaint as to all but the CPA claim. The Court reviews each claim.

#### a.   *Copyright Infringement*

"To establish direct copyright infringement, the [plaintiff] must (1) show ownership of the allegedly infringed material and (2) demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (citation and quotation omitted). "To prove 'willfulness' under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights." *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 944 (9th Cir. 2011) (citation and quotation omitted).

Bungie has sufficiently alleged a meritorious claim of willful copyright infringement. Bungie has identified four copyright registrations for Destiny 2 both as an audiovisual work and

1    as software, establishing its ownership. Dkt. No. 18 ¶ 21; Dkt. No. 38-2 at 2–10. Bungie has

2    alleged and provided evidence that Claudiu-Florentin helped develop the VeteranCheats Hack

3    which directly infringed on Bungie's copyrighted works in a variety of ways. Dkt. No. 18

4    ¶¶ 33–41; Dkt. No. 38-16 at 2–9. And Bungie has provided cogent allegations and additional

5    evidence that Claudiu-Florentin's infringement was willful. Dkt. No. 18 ¶¶ 60, 68, 78; Dkt.

6    No. 38-9 at 2–5; Dkt. No. 38-16 at 2–9.

7            The Court finds that entry of default judgment on these claims is proper.

8                          b.    ***The Digital Millennium Copyright Act***

9            The DMCA prohibits the circumvention of any technological measure that effectively

10   controls access to a protected work and grants copyright owners the right to enforce that

11   prohibition. 17 U.S.C. § 1201(a). Bungie may prove its claim under § 1201 by demonstrating

12   that Claudiu-Florentin: "(1) traffic[ked] in (2) a technology or part thereof (3) that is primarily

13   designed, produced, or marketed for, or has limited commercially significant use other than

14   (4) circumventing a technological measure (5) that effectively controls access (6) to a

15   copyrighted work." *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 953 (9th Cir. 2010), *as*

16   *amended on denial of reh'g* (Feb. 17, 2011), *opinion amended and superseded on denial of reh'g*,

17   No. 09-15932, 2011 WL 538748 (9th Cir. Feb. 17, 2011). Here, Bungie has provided allegations

18   and evidence that Claudiu-Florentin developed and designed the VeteranCheats Hack to

19   circumvent Bungie's technological measures to protect its copyrighted works in violation of

20   § 1201(a). Dkt. No. 18 ¶¶ 33–41, 48–49; Dkt. No. 38-1 ¶¶ 1, 6, 10, 17–25, 36; Dkt. No. 38-9

21   at 2–5; Dkt. No. 38-16 at 2–9. Claudiu-Florentin used the VeteranCheats Hack to bypass

22   Bungie's control features and sell his product to the public at large. *See* Dkt. No. 38-1 ¶¶ 26–27,

23   31–33, Dkt. No. 38-6; Dkt. No. 38-7 ¶¶ 9–10; Dkt. Nos. 38-13–38-16. The Court finds that entry

24   of default judgment on these claims is proper.

c.      ***Breach of Contract and Intentional Interference with Contractual Relationship***

To prove a breach of contract, Bungie must demonstrate that the "contract imposes a duty, the duty is breached, and the breach proximately causes damage to" it. *See Nw. Indep. Forest Mfrs. v. Dep't of Lab. & Indus.*, 78 Wn. App. 707, 712 (1995). "A claim for tortious interference with a contractual relationship or business expectancy requires five elements: (1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage." *Leingang v. Pierce Cnty. Med. Bureau, Inc.*, 131 Wn.2d 133, 157 (1997). "Intentional interference requires an improper objective or the use of wrongful means that in fact cause injury to the person's contractual relationship." *Id.*

Bungie has provided sufficient allegations and evidence that Claudiu-Florentin breached the terms of the LSLA and tortiously interfered with Bungie's contractual relationship with other users of Destiny 2. Bungie has shown that Claudiu-Florentin violated the terms of the LSLA by accessing Destiny 2 and the underlying software to create the VeteranCheats Hack. *See* Dkt. No. 38-1 ¶¶ 26–31. And by selling the VeteranCheats Hack to other users of Destiny 2, Claudiu-Florentin induced other users to violate the terms of the LSLA and interfere with Bungie's control of Destiny 2 and the gaming environment through which it intended to generate revenue. And Bungie has shown that it suffered damages through this conduct by losing out on in-game revenue and expending substantial sums to combat the VeteranCheats Hack. *See* Dkt. No. 38-1 ¶¶ 32–37. The Court finds that entry of default judgment on these claims is proper.

1

        d.      **_CPA_**

2

        To prevail on its CPA claim, Bungie must establish "(1) an unfair or deceptive act or

3

practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a

4

person's business or property, and (5) causation." _Panag v. Farmers Ins. Co. of Wash._, 166

5

Wn.2d 27, 37 (2009) (citing _Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co._, 105

6

Wn.2d 778, 784 (1986)). "[A] claim under the Washington CPA may be predicated upon a per se

7

violation of statute, an act or practice that has the capacity to deceive substantial portions of the

8

public, or an unfair or deceptive act or practice not regulated by statute but in violation of public

9

interest." _Klem v. Wash. Mut. Bank_, 176 Wn.2d 771, 787 (2013).

10

        The Court remains unconvinced that Bungie has alleged a valid CPA claim. Specifically,

11

it has not provided evidence of an unfair or deceptive act that had the capacity to deceive a

12

substantial portion of the public. Bungie itself alleges that the VeteranCheats Hack cheat was

13

developed and sold as an express means to allow players to cheat in the Destiny 2 game. Dkt.

14

No. 18 ¶ 3. There are no cogent allegations or evidence that individuals who purchased the

15

VeteranCheats Hack cheat were deceived or that they did not intend to purchase a cheat-enabling

16

software. Bungie suggests that Claudiu-Florentin deceived consumers by charging "high prices"

17

for the cheat. Dkt. No. 38 at 17. But Bungie provides no evidence that the price was unfair or

18

deceptive. Even if it was, this conduct did not cause any damage or injury to Bungie. The Court

19

rejects Bungie's request for entry of default judgment on this claim.

20

        3.      **Factor Four: Sum of Money at Stake**

21

        Given the substantial sums that are at stake and the seriousness of the alleged

22

misconduct, the Court finds that this _Eitel_ factor favors entry of default judgment.

23

24

4. **Factor Five: Possibility of Dispute of Material Facts**

The Court finds little possibility that the core, material facts are in dispute. Not only has Claudiu-Florentin failed to appear in this action, but Bungie has provided detailed evidence in support of its claims that is likely difficult to be rebutted. This factor favors entry of default judgment.

5. **Factor Six: Whether Default is Due to Excusable Neglect**

There is no evidence that Claudiu-Florentin's failure to appear is due to excusable neglect. Evidence submitted by counsel shows that Claudiu-Florentin is aware of this action and has chosen not to participate. *See* Dkt. No. 38-9 at 2–5. This factor favors entry of default judgment.

6. **Factor Seven; Strong Policy in Favor of Decision on the Merits**

The Court maintains a strong policy preference in favor of resolution of Bungie's claims on the merits. But Claudiu-Florentin's decision not to appear in this case vitiates against this policy. This factor weighs in favor of entry of default judgment.

Having considered and balanced the Eitel factors, the Court finds that entry of default judgment is proper on all but the CPA claim. On this basis, the Court GRANTS in part Bungie's Motion for Default Judgment.

**D.    Amount of the Default Judgment**

Bungie asks the Court to award it: (1) $11,696,000 in statutory damages under the DMCA; (2) $146,662.28 in actual damages related to its copyright claims; and (3) $217,250.70 in attorneys' fees and costs. The Court agrees.

First, Bungie is entitled to statutory damages for Claudiu-Florentin's violations of the DMCA. Under the Act, the Court may award statutory damages "in the sum of not less than $200 or more than $2,500 per act of circumvention, device, product, component, offer, or

1    performance of service, as the court considers just." 17 U.S.C. § 1203(c)(3). Based on the

2    allegations in the amended complaint and the evidence provided, the Court is satisfied that

3    Claudiu-Florentin's violations of the DMCA were willful and that an award of up to $2,500 per

4    download of the VeteranCheats Hack is "just." *See, e.g.*, *Sony Computer Ent. Am., Inc. v.*

5    *Filipiak*, 406 F. Supp. 2d 1068, 1075 (N.D. Cal. 2005) (finding that an award of $2,500 for the

6    willful sale of copyright infringing devices). Bungie has asked for only $2,000 for each of the

7    5,848 downloads of the VeteranCheats Hack and the Court finds that this amount is appropriate.

8    The Court will therefore enter default judgment in the amount of $11,696,000 for

9    Claudiu-Florentin's violations of the DMCA.

10          Second, Bungie is entitled to recovery of actual damages for its Copyright Act claim.

11   *See* 17 U.S.C. § 504. Bungie seeks to recover what it claims to be Claudiu-Florentin's profits

12   from the copyright infringement as permitted by 17 U.S.C. § 504(b). Bungie has provided

13   sufficient evidence to support this request, including accounting information from Stripe, as well

14   as Barker's declaration which explains the basis for the calculation. Dkt. No. 38-1 ¶ 33; Dkt.

15   No. 38-6; Dkt. No. 38-7 ¶¶ 8-9.) The Court therefore awards $146,662.28 in actual damages for

16   the Copyright Act claim.

17          Third, Bungie is entitled to its reasonable attorneys' fees and costs. Reasonable attorneys'

18   fees and costs are recoverable under the Copyright Act. *See* 17 U.S.C. § 505. "In deciding

19   whether to award attorneys' fees, courts in this Circuit consider certain factors, including (1) the

20   degree of success obtained; [ (2) ] frivolousness; [ (3) ] motivation; [ (4) ] objective

21   unreasonableness (both in the factual and legal arguments in the case); and [ (5) ] the need in

22   particular circumstances to advance considerations of compensation and deterrence." *Halicki*

23   *Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1230 (9th Cir. 2008) (quotation and

24   citation omitted). Here, the Court finds that all five factors favor an award of attorneys' fees and

1  costs. And it finds the requested amounts to be reasonable. The Court therefore approves the

2  award of $217,250.70 in attorneys' fees and costs. *See* Dkt. No. 38-1 ¶ 37.

3  In total, the Court directs entry of default judgment in the amount of $12,059,912.98.

4  **E.    Injunctive Relief**

5  The Court finds it appropriate to enter a permanent injunction against Claudiu-Florentin

6  on the majority of the terms Bungie requests. The Court notes that Bungie has requested an

7  injunction that extends to its software beyond Destiny 2 and includes broad language about its

8  affiliates, parents, and subsidiaries. The Court has limited the injunction to the Destiny 2 game,

9  which is the sole game at issue with regard to Bungie's Copyright Act and DMCA claims. And

10  the Court has limited the injunction to Bungie rather than any subsidiaries, parents, and affiliates,

11  given that this action was brought solely by Bungie, Inc. and no other entities.

12  "As a general rule, a permanent injunction will be granted when liability has been

13  established and there is a threat of continuing violations." *MAI Sys. Corp. v. Peak Computer,*

14  *Inc.*, 991 F.2d 511, 520 (9th Cir. 1993). And under the Copyright Act the Court may "grant

15  temporary and final injunctions on such terms at it may deem reasonable to prevent or restrain

16  infringement of a copyright." 17 U.S.C. § 502(a). A plaintiff seeking permanent injunctive relief

17  must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at

18  law, such as monetary damages, are inadequate to compensate for that injury; (3) that,

19  considering the balance of hardships between the plaintiff and defendant, a remedy in equity is

20  warranted; and (4) that the public interest would not be disserved by a permanent injunction."

21  *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

22  The Court finds that all four *eBay* factors favor entry of a permanent injunction. First,

23  based on the admitted allegations in the amended complaint, Claudiu-Florentin's copyright

24  infringement has caused irreparable harm to Bungie's goodwill and reputation and has caused it

to incur expenses to prevent further damage from cheat software. Second, Bungie has shown that

monetary damages alone will not prevent Claudiu-Florentin from engaging in further abusive

conduct. Given Claudiu-Florentin's decision not to appear in this case, there can be no

assurances that Claudiu-Florentin will no longer engage in the conduct at issue in this case. This

satisfies the Court that monetary damages alone are insufficient. Third, the equities favor Bungie,

who seeks to enjoin Claudiu-Florentin from engaging in illegal conduct that benefits only

Claudiu-Florentin. This favors Bungie and the requested injunction. Fourth, an injunction

prohibiting Claudiu-Florentin from engaging in further conduct that infringes on Bungie's

copyrights will serve the public interest. The Court GRANTS the Motion and ENTERS the

following PERMANENT INJUNCTION against Claudiu-Florentin as follows:

     1.     Claudiu-Florentin, all persons acting under Claudiu-Florentin's direction or

control (including but not limited to Claudiu-Florentin's agents, representatives, and employees),

and those persons or companies in active concert or participation with Claudiu-Florentin who

receive actual notice of this Order by personal service or otherwise, must immediately and

permanently cease and desist from any of the following:

     a.     Taking any steps on Claudiu-Florentin's own behalf or assisting others in:

(i) creating, distributing, advertising, marketing or otherwise making available; obtaining,

possessing, accessing or using; promoting, advertising, or encouraging or inducing others to

purchase or use (including via any social media account, website, or video-sharing account);

(ii) selling, reselling, or processing payments for; (iii) assisting in any way with the development

of; sharing, copying, transferring, or distributing; (iv) publishing or distributing any source code

or instructional material for the creation of; (v) or operating, assisting, promoting or linking to

any website designed to provide information to assist others in accessing, developing or

obtaining: (A) the Destiny 2 Software Module, either alone, or in conjunction with the

Defendant's Software; or (B) any software whose use infringes Intellectual Property owned or controlled by Bungie, circumvents technological measures that effectively control access to Destiny 2, violates Bungie's licensing agreements, assists players of Destiny 2 in violating Bungie's licensing agreements, or is designed to exploit or enable the exploitation of Destiny 2.

       b.      Investing or holding any financial interest in any enterprise, product, or company which Claudiu-Florentin knows or has reason to know is now, or intends in the future to be, engaged in any of the foregoing activities prohibited by this Default Judgment and Permanent Injunction.

       c.      Reverse engineering, decompiling, packet editing, or otherwise manipulating Destiny 2 without authorization, or providing any assistance to any person or entity engaged in such activities.

       2.      The Court further enjoins Claudiu-Florentin and all third parties acting in concert and participation with Claudiu-Florentin, including but not limited to any domain name registrars or registries holding or listing any of Claudiu-Florentin's websites or storefronts, from supporting or facilitating access to any and all domain names, URLs, and websites (including, but not limited to, insert sites), including any and all future and successor domain names, URLs, and websites, through which Claudiu-Florentin traffics circumvention devices that threaten Bungie's technological protection measures or which infringe Bungie's Intellectual Property rights identified in this action.

       3.      Claudiu-Florentin is prohibited from using any social network, video sharing, or digital messaging accounts under their control (including, but not limited to, Facebook, groups or chats on Facebook, YouTube, Twitter, Tik Tok, Discord, GBATemp, Reddit, Telegram, Skype, WeChat, WhatsApp, Signal, or their equivalent) to provide any content relating to the distribution, marketing, offering for sale, or promotion of the Wallhax cheat software or any

other software whose use infringes any of Bungie's Intellectual Property rights specified in this action, circumvents Bungie's technological measures that effectively control access to Destiny 2, or violates (or assists players of Destiny 2 in violating) Bungie's license agreements, and must take all necessary steps to remove any information on any non-dedicated (e.g., personal) social network accounts under Claudiu-Florentin's control used to distribute or promote any of the foregoing.

4.      Claudiu-Florentin is further prohibited from engaging in any other violation of the Digital Millennium Copyright Act or the Copyright Act, or any other federal or state law, with respect to Bungie and its intellectual property at issue in this action.

5.      Claudiu-Florentin must destroy the Destiny 2 Software Module or any software that in any way interacts with or pertains to Bungie's Intellectual Property.

6.      This permanent injunction constitutes a binding court order, and any violations of this order by Claudiu-Florentin will subject them to the full scope of this Court's contempt authority, including punitive, coercive, and monetary sanctions.

7.      Any company or entity that any of Claudiu-Florentin controls in the future will also comply with the provisions of this Default Judgment and Permanent Injunction.

8.      This permanent injunction is binding against Claudiu-Florentin  worldwide, without regard to the territorial scope of the specific intellectual property rights asserted in the Amended Complaint and may be enforced in any court of competent jurisdiction wherever Claudiu-Florentin or his assets may be found.

9.      Nothing contained in this Default Judgment and Permanent Injunction limits the right of the Bungie to seek relief, including without limitation damages, for any infringements of any Intellectual Property rights occurring after the date of this Judgment and Permanent Injunction.

10.     The Court finds there is no just reason for delay in entering this Default Judgment and Permanent Injunction and, pursuant to Federal Rule of Civil Procedure 54, the Court directs the entry of this Default Judgment and Permanent Injunction against Defendants.

### III.     CONCLUSION

The Court finds that default judgment is appropriately entered in Bungie's favor as to all but the CPA claim. The Court finds that damages shall be entered in the amount of: (1) $11,696,000 for violations of the DMCA; (2) $146,662.28 for violations of the Copyright Act; and (3) $217,250.70 in attorneys' fees and in costs. The total award shall be entered in the amount of $12,059,912.98. The Court also finds that entry of a permanent injunction on the terms specified above is appropriate and necessary. On these grounds, the Court GRANTS in part the Motion for Default Judgment, ENTERS default judgment, and PERMANENTLY ENJOINS Claudiu-Florentin on the terms specified above.

Dated this 26th day of April 2023.

Tana Lin
United States District Judge